The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oh, yay, oh, yay, oh, yay. All persons having a matter of formal business for the Honorable United States Court of Appeals for the Fourth Circuit must withdraw now and get their attention, for the court is now sitting. That's the United States in its Honorable Court. All right. Be seated, please. Oh, excuse me. I'm sorry. Judge Wilkinson is on our remote, and he's presiding. I'm just sitting, being into the camera. All right. We're pleased to hear from you, Mr. Watkins. Thank you, sir. I'm Bill Watkins, and I represent Mr. Fowler. Every time I go to the prison for a pre-sentence interview with probation, they explain to my client that they work for the court, that they are not really an independent agency, they don't work for the prosecutor, they don't work for me, and it is their duty to prepare a pre-sentence report that will help in the sentencing. In this case, the probation officer relied on their, I assume, some computer records and PCR. It only said there was a ticket, and whether or not they are accurate, it added one point to his criminal history score. He went from a two to a three in the criminal history. The judge sentenced— The one point was important to your client. Absolutely, Your Honor. And did you object to that below? I did not. I was not the attorney there. So it's raised up above, and pursuant to the proceedings above, the government, which it could have done below, provided us with the that shows that there was a trial, and the person was found guilty. There is a computer printout from the clerk of court in Greenville that indicates there was a guilty, and he went to counsel. The problem with that is that that's entered by the clerk, and all that was in the PSR was a ticket. Now the— This would have been uncovered if it had been challenged. Somebody would have said, oh, I'll take a look and see what it is. No one had that opportunity. So we now have it, regardless of where it was provided by, we now have that information unless you're saying that's a— I'm saying that I— I was going to say unless somehow you think that's a fabricated document, but I'm assuming that we can look at it. I'm just worried about the accuracy of the document, Your Honor. It's just a copy, isn't it? You're worried about the accuracy or the completeness? Both. Okay. But you don't have any independent evidence to— No, sir. —predict anything that's on it? No, sir. Now, the only thing that was raised in the court below was in the sentencing memorandum that was provided to the judge. The lawyer said that he had trouble getting information, but there was nothing in the oral argument. That's a lawyer that filed the Andrews brief? Yes. Well, it just still comes down. The problem is the plain error because the pre-sentence report was clear that a CDV, which is a participation in a criminal domestic violence, program counts as one point. And that wasn't obscure. And the PSR made the finding that Fowler's CDV warranted a criminal history point. And there was never any objection to that. Yes, sir. And the point is, and I don't blame you at all for it, but you, unfortunately, have to adopt your predecessor's case, including any omissions. And we have so many cases that say in the absence of objection, the district court is perfectly free to adopt that PSR. Yes, sir. I just don't see that there was any error at all under our precedent, much less plain error. It's just a plain error aspect of this. It bothers me. Yes, sir. I believe and would argue that there is plain error on the part of the court because they have the duty to make sure the PSR is accurate. Once they know the duty is to make sure that the duty is on the part of counsel to object to the PSR. That's the way the adversary system is supposed to work. And then we have our Terry case and many cases afterwards that say in the absence of objection, the court is free to adopt the PSR. And the court did exactly that. How could that even be error, much less plain error when the court follows our precedent on the point? If there was clear, plain error in the PSR, then they have the burden to make sure that it's right. I think the burden shifts to the court. Who's the they in that part of the court? You're saying the court, the district court or this court? No, sir, the district court. The district court had the burden to get it right. To make sure that the PSR is right. But the fellow was represented by counsel and the government was represented by counsel and the probation officer getting it together and so on and so on the lawyers. I think the burden shifts to the lawyers to object as Judge Wilkerson pointed out. But I think the initial burden is on the court to make it right and make sure that they are the correct document. But it turns out they were right. I don't know that. I don't know whether they were right or wrong. Well, since the debate has shifted to this court, we were provided with information to confirm that it was properly included. You're talking about the clerk's document? Yes. Which was available to the probation officer. I understand, but you know, the pre-sentence report has a lot of facts and a lot of information. And there are, if we had to load up those pre-sentence reports with all the underlying supporting documents and the better purpose is to have the probation office create a document with the best information they have. And then the attorney can object and they can dig further if it's necessary. But in this case, the PSR said there's one point for this offense and there was no objection. And so the court included it. And then there's a challenge to that because there's not enough information to confirm it. But now on appeal, after everybody for the first time is trying to address it, we have provided with a document that seems to suggest that the error didn't make any difference if there was an error. I would argue that the document that was provided is not trustworthy. It is a document that was prepared by a clerk. There's a special record. Clerks prepare court orders all the time. Clerks file papers, clerks certify documents and records. Is there any suggestion that the clerk here was untoward? I know of no suggestion that she didn't try to do what was correct. But she may simply made a copy of what occurred at trial. No, sir. I don't know that that's true. It's reported back to the clerk's office the way it practically works. And in this case, that record doesn't show whether they had an attorney or not. I may be... They had a trial, didn't they? I don't know that, sir. Following the trial, the person was found guilty as a bench trial. That's what it says. That's not been my experience. How does your experience... That means that I've done some of the CDVs and what has happened is the judge has said, we'll dismiss this case if you'll go to counsel. That's not a conviction. I don't know what happened in this case. The record indicates as you've said... It's a finding of guilt. ...bench trial. You want us to read it to say that there was a bench trial of a pro se defendant? I think that is fairly... That's what you want it to be, just to be read. And no finding of guilt. I don't know whether he had an attorney or not. Just something that's not in the record. You want to mean that he didn't have an attorney? I would like to believe that he did not. Well, you got a Gideon violation. Maybe. Maybe. I mean, obviously, you know, it's... We did have a Gideon violation. I thought you... That's what the record indicates, there's no attorney. I thought one of your briefs, I think, says the burden is on the government. Yes, sir. Proving he did have a lawyer. Yes. You know, one of the additional points that concerned me was that you went so far, Taylor went so far, he not only didn't object, but he withdrew his objections to the PSR at sentencing. He affirmatively withdrew the objections to the PSR. And when the debate that we might be having about the South Carolina Justice Department data, this is not a debate about the prior conviction that we should be having up here. It's a debate that should be taking place before the trial judge with the adversary system functioning in the way that the adversary system is expected to. This is the worst place to be doing this kind of ab initio sentencing investigations. This just isn't a forum for this kind of debate. And it's not your fault at all. But the problem was, as we said, that there was no objection. And you're familiar with that Terry case, aren't you? What is your take on, what's your response on the notion that the defendant waived any objection to the PSR? Because it seems to me you're making an objection to the PSR now. And yet, any objection that the defendant might have had was withdrawn. And the question is, should we construe that as a waiver? It is absolutely correct, your honor, that the lawyer waived his objections. And that was done in open court. The only indication that he was objecting to the one-point addition was in a sentencing memorandum, where he basically said, I can't figure out what to do. But it was waived, and as a result, the judge relied on the PSR. My point today, that I'm not making very well, but I'm trying, is that when the probation office relied on unreliable, if they did, relied on unreliable records, then the court made a plain error. Did you see what would happen if that was pointed out, an objection was made, and said, there's a point being assessed here without sufficient information? Yes, your honor. Immediately, the probation office would have run that down, or the U.S. attorney, and the court would have said, okay, I need evidence on this before I approve it. Yes, sir. But in this case, it's on there. The one point is added, that some objections are made. The attorney withdraws the objections, and basically, the court, there's no objection to the pre-sentence report as written, and the court adopts it and points one. Now, on appeal, you say, that objection should not have been waived, number one. And number two, that objection is there because there was insufficient information. So now, on appeal, the U.S. attorney comes in and says, well, I do have information, I could have gotten it then, and as you know, what it shows, the document shows. Yes, sir. Now, so your argument now is, the document's still insufficient, and asking us, an appellate court, to start making readings of fact and rulings about evidence. Just to make one comment, your honor. I think that document was available to probation, wasn't it? Oh, sure, but, yeah. And I'm assuming that they probably looked at it. And if they looked at it, then it's even better for the probation, because they obsessed a point, and they concluded the document shows that there was a trial, number one, finding of guilt, number two. That's correct, your honor. Otherwise, they wouldn't have added a point. Yeah, yeah. I understand. My pressing my questions like this to you, it's like Judge Wilkinson said, it's, we have brought you in, face the music here, and we appreciate that. It's a good experience. I was in the Army, and I had Sergeant Majors train me to be available. This way, the adversary system works. Yes, sir. And we just apply the rule. I mean, this doesn't work out for your fellow. Then there's a, he has to go 2255 or something, and say the waiver down below was ineffective counsel. I understand. That's not before us. You just, you're playing the cards that you were dealt, and it wasn't a very good hand. Well, I've had that happen a lot as an attorney, your honor. But you don't need to fall. I'm not, I'm still Oregon Plain Air. That's right. Still Oregon Plain Air. All right. Thank you very much, counsel. Thank you. Mr. DeHal. Thank you, your honors. May it please the court. The district court reasonably imposed a sentence at the bottom of Mr. Fowler's guideline range. In so doing, it made no error, let alone plain error, calculating his criminal history score. And it also adequately explained the sentence that it was imposing. We therefore submit that the sentence should be affirmed. Now, courts raised two issues. I'll go in order the way they've been raised. Unless the court would like to go otherwise. But on this criminal history point, we certainly believe that under cases like Vincent, Weston, Foster, those cases all indicate that, as your honors have pointed out, that burden of proving some sort of a Gideon violation would be on the defendant because of the presumption of regularity that attaches to a final conviction. I believe in... Did the defendant have a lawyer at that trial? Well, PSR says we don't know one way or another. That's absolutely true. I would quote Vincent in saying that that ambiguity, and that Vincent involved that exact same type of language in the PSR, says that that would have not established a plain error in counting that conviction. So it's not an affirmative statement that there was a potential Gideon violation. It is just an acknowledgment that information was lacking because the probation officer was not able to find this. It's not like in the Hondo case, which was another South Carolina case, where probation affirmatively stated that there was a lack of counsel. They were able to determine that in the Hondo case. Here, as is the practice with this probation office, if they just don't know, they just say it's unknown. And at that point, the presumption of regularity from part of the South Carolina statute requiring that every defendant be either afforded counsel or advised to it, whether they waive, those things come into play. And so we would say, given that presumption, given the absence of the presentation below, there was no error in the district court relying on the PSR that any burden the government had in proving the fact of that conviction or attorney representative. You're saying there's a presumption of regularity? Yes, sir. That applies? Yes, sir. Is that a federal court rule or state of South Carolina rule that you're arguing about? It's a bit of a combination. So when we go to park, that attaches a burden on the defendant of rebutting a presumption of regularity. And this court, in cases like I believe it's Weston and Foster, have looked at that statute, the South Carolina statute, and said, we will presume that that is being applied in every case. So it kind of works in tandem. So when you have that here, we have a presumption that a defendant like Mr. Fowler was advised of his right to have an attorney. And if he didn't have one in that CDV case, it was because he waived it. Do you have anything further to add? No. On that point, I would just say I understand counsel's criticisms of the public index that we've attached. We think that it is a reliable system that the South Carolina Judicial Department provides. And indeed, Mr. Fowler, in his sentencing memorandum below, attached two other printouts from that same system as a way of proving facts about some of his other convictions. Well, it may be the reason that the PSR, that there were no objections to the PSR, was that Fowler, the lawyer, felt that any objection would be futile in light of the data sheet from the South Carolina Justice Department. And the fact that you can look beyond Shepherd documents if you need to, just to determine the fact of a conviction. But it may be that the reason that there was no objection was because the lawyer felt quite correct, quite correctly, that there was no basis for an objection, that it was perfectly accurate that he had had a conviction, a sentence of participation in a domestic violence program, and that that should count. I mean, we're assuming that the objection would have revealed some mistake. But it doesn't appear to me on the face of it that there was a mistake. We're talking about a sentence upon a guilty plea. And why wouldn't a sentence of participation in a CDV, a criminal domestic violence program, why wouldn't that count? I mean, why wouldn't you add a criminal history point? And the lawyer probably looked at that and said, yeah, I haven't got much of an argument here. And that may have led to the waiver. I think that's a perfectly reasonable way of looking through this. As Mr. Watkins pointed out, in one of the sentencing memoranda, they say, well, we don't have a lot of information on this, so we can't really challenge it. But we also know, because they said it at the beginning of the hearing, that Mr. Fowler and Mr. Yarbrough, counsel below, they went through this PSR together. So clearly, they had it in mind. Well, maybe is there any basis for challenging it? But they discussed it. So if Mr. Fowler thought, well, no, no, I actually wasn't convicted, even though the PSR says I was. Or, no, maybe I didn't have an attorney and I was denied it. You would think that at some point in that conversation, they might have pursued it if there was anything there to pursue. But your point, Judge Wilkinson, is well taken about the fact that we're now sort of litigating this point for the first time in the court of appeals. And really, that's not the correct form for this. We have to just rely on what the record is here. And the record we have is indicating only that this was a properly secured conviction in a sentence of follow-up order. And therefore, the assessment of one point was proper under 4A1.1c. Murray, do you have anything further that you wish to add, sir? On that point, no, Your Honor. I'm happy to go into the second issue about the adequacy of the explanation if the court has any questions about that. Well, let's see if the court has some questions about the, you're talking about the argument for a downward departure. That's correct, Your Honor. Well, let's see if the court has some questions about that. Judge Niemeyer, do you have some questions, any questions about the- I have no further questions. Judge King, do you have any questions about addressing the arguments for a downward departure? I do not. All right, we thank you. I'm back. We're glad to see you back. Thank you, sir. I would like to make just a couple of quick points on the first thing on the record is that I don't think the record is adequate. Obviously, I think I'm going to be outvoted on that. Well, you know, just on that, it's, I hear what you're saying, and you bring long experience and suggest that such a document that we have before us could be just a pro forma response to going into that counseling system, that they automatically, somebody, you come into court, the guy's there alone, we'll go into the counseling session, and that's what they fill in. But the problem with that is we don't have anything to support that. And if, in order to find some error, I would think we would need to have a proffer of what would be shown if a fuller development of the record was made. And we don't. I mean, we still see two things. We see, number one, there was a trial. And two, there was a finding of guilt. And we don't have any evidence about lawyering, but we also don't know whether he waived the lawyer or there was a lawyer. And you point out, I really understand what you're saying about state court proceedings. You know, I was sort of in your same boat too for a long time. But it's hard for us to just have this dialogue and say, well, maybe that could have happened, therefore we set it aside, even though no discussion of this was conducted in the district court. We're here with the correct error. And I guess your argument is the error is the insufficiency about that. My argument, I guess, quickly is that I think it was plain error, and I agree with you. Burden then shifted to the attorney. And it makes me feel warm about the amount of objections that I often make. That's a proof of due record. That's the point I wanted to make. Would you like for me to comment on the judge's sentencing justifications? Well, it's your argument. We didn't have any further questions, but you may make any point here. I think I'm fine on that. Thank you. We thank you, and we appreciate both of your arguments.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King